## THE SWITZERLAND.[1]

### LA GASCOGNE.

### COMPAGNIE GENERALE TRANSATLANTIQUE *v.* THE SWITZERLAND.

### UEBERWEG, Master, etc., *v.* COMPAGNIE GENERALE TRANSATLANTIQUE.

#### (*District Court, E. D. New York.* May 6, 1889.)

COLLISION—BETWEEN STEAMERS—OVERTAKING VESSELS.

The steam-ship Switzerland was going down the bay of New York at the rate of 9 knots an hour. The steam-ship La Gascogne, going down at the rate of 16 knots, had overtaken the Switzerland, and was drawing ahead on her port side, when the vessels came in collision, the bow of the Switzerland striking the starboard quarter of the Gascogne. Cross-libels were filed for the resulting damage, the Gascogne contending that the collision was due to carelessness on the part of the wheelsman of the Switzerland in allowing her to swing to port as the Gascogne was going by; the Switzerland claiming that the Gascogne attempted to cross her bows under a port helm when the distance between the vessels was too small to permit of such a maneuver. On conflicting evidence the court found that the collision was caused by a swing to port on the part of the Switzerland,—which was carrying a port helm in the strong north-west wind, and which would so swing under such circumstances by momentary carelessness on the part of the wheelsman,—and therefore *held*, that the fault for the collision lay with the Switzerland in failing to hold her course.

In Admiralty. Cross-libels for damages by collision.
*Coudert Bros.*, for the Gascogne.
*Biddle & Ward*, for the Switzerland.

BENEDICT, J. These are cross-actions arising out of a collision which occurred on the 21st day of January, 1888, in the harbor of New York, not far below the statue of liberty, between the steam-ship Switzerland and the steam-ship La Gascogne, two passenger steamers, at the time bound out of the port of New York on a voyage to sea. The Gascogne was the faster vessel, and, having come up with the Switzerland, was passing her on her port side at a distance estimated by various witnesses at 150 to 300 feet. The bow of the Gascogne had drawn ahead of the

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

bow of the Switzerland when the vessels came in collision, the Switzerland's bow striking the Gascogne on her starboard quarter at an angle of about 30 degrees.    To recover the damages resulting from this collision to the respective vessels each vessel has brought an action against the other.    The collision occurred in broad daylight, on a clear day, with no other vessels to interfere with the navigation of either vessel.    It is manifest, therefore, that the collision was caused by negligence, but where the negligence was is not so clear.    The contention on the part of the Switzerland is that the Gascogne, instead of keeping her course, as she was bound to do, until she had passed the Switzerland, attempted to cross the Switzerland's bows under a port helm when the distance between the vessels was too small to permit her to accomplish such a maneuver in safety.    On the part of the Gascogne the contention is that while she was passing the Switzerland, and holding her course at a safe distance, the Switzerland, instead of keeping her course, as she was bound to do, suddenly swung over to the eastward, and struck the Gascogne upon her starboard quarter.    It is conceded by the advocates on both sides that one of these two contentions is true, and each earnestly contends that the truth lies upon his side.

The testimony is full of contradictions not easy to reconcile.    After a careful examination of it in all its aspects, I incline to the opinion that the weight of evidence is on the side of the Gascogne.    Some of the considerations which have led me to this conclusion will be mentioned.    I observe first that it is more probable that the Switzerland should have swung over to the east, as the Gascogne charges, than that the Gascogne should have attempted to cross the bows of the Switzerland, as the Switzerland charges.    A strong north-west wind was blowing.    The Switzerland was carrying a port helm, and there is testimony in the case that under such circumstances a momentary carelessness on the part of the men at the wheel would be likely to be followed by a swing of the steamer's head to the eastward, which would carry her some distance to the east of her course before it could be stopped by the helm.    Such carelessness is denied by those at the wheel of the Switzerland, but many witnesses from the Gascogne testify to such a swing by the Switzerland. There is, indeed, a mass of testimony from the Switzerland going to prove that before she struck the Gascogne her helm was put hard a-port, and  .any witnesses from the Switzerland say that the cause of this porting was a dangerous approach of the Gascogne towards the Switzerland's course.    The testimony seems to me to prove that the helm of the Switzerland was put to port, and that this was done suddenly, under the stress of some emergency, but it has not satisfied me that this emergency was a change of course on the part of the Gascogne.    On the contrary, I incline to the opinion that the wheel of the Switzerland was suddenly put hard a-port to overcome a swing to eastward, which the Switzerland had taken in the strong north-west wind.    Momentary carelessness under the circumstances is sufficient to account for such a swing as the testimony shows.    On the other hand, the maneuver charged by the Switzerland upon the Gascogne cannot be accounted for by momentary negli-

gence. If attempted, it must have been the result of a deliberate design on the part of those responsible for the navigation of the Gascogne. Such a design, involving as it did a bringing of the ship's head up against the wind, and giving her a course across the channel down which she was bound appears to me improbable. The maneuver, if undertaken as charged, was an act of gross misconduct deliberately committed. It was, moreover, wholly uncalled for. There could have been no rivalry between the steamers, inasmuch as the speed of the Switzerland was nine knots, and that of the Gascogne sixteen knots. There was room enough for both vessels on their respective courses, and the Gascogne not only could not gain, but would surely lose, by passing to westward across the course of the Switzerland. The testimony does not seem to me to account for such a maneuver on the part of the Gascogne. Moreover, the account given by the witnesses from the Switzerland as to the action of their vessel under the port helm must be incorrect. They say that when their helm was ported their vessel came up to the wind four or five points before the blow, and it is proved that the two vessels came together at an angle of thirty degrees. The account of the Switzerland therefore requires that at the time of the blow the Gascogne should be heading somewhat up the channel down which she was bound. It seems to me incredible that the Gascogne should ever have attained such a heading under the circumstances. The angle of incidence disproves the account given by those on the Switzerland.

Again, the testimony from those on board the Gascogne shows beyond controversy that after the Gascogne had come abreast of the Switzerland the attention of those on board the Gascogne was no longer directed to the Switzerland; that it was not until the courses of the two vessels had become crossing that the Switzerland was again observed by those on the Gascogne. No signals were given by either vessel. The discovery on the part of those on the Gascogne that a collision with the Switzerland was imminent was substantially accidental, the attention of all on board the Gascogne having been at the time directed ahead, and not astern. Such a state of things on the part of the Gascogne could hardly have existed if she had been engaged in a deliberate attempt to cross the bows of a steamer approaching her closely from behind. The danger of an attempt to cross the Switzerland's bows under the circumstances would be manifest the moment the maneuver began, and from that moment not only the eyes of those responsible for the navigation of the Gascogne, but the eyes of many others on board the Gascogne would have been fastened upon the Switzerland. That such was not the case seems to me to show that no such maneuver on the part of the Gascogne as is charged by the Switzerland was in process of execution, and by consequence that the cause of the collision was a sudden and unexpected swing of the Switzerland towards the Gascogne. In arriving at this conclusion I have not overlooked the statement in the libel of the Gascogne that her helm was ported just before the collision, nor the conflict of testimony on that point between the pilot and the master of the Gascogne. But the porting set forth in the libel, and stated by the master

will not account for the collision, and, in my opinion, in no way tended to produce it. My conclusion, therefore is that the collision in question was caused by the fault of the Switzerland in not holding her course as she was bound to do. The libel against the Gascogne is accordingly dismissed, and in the action against the Switzerland let a decree in favor of the libelant be entered with an order of reference.